

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 4, 2015**

_Barbara J. Houser_

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 14-35049-BJH** |
| | § | **(Chapter 11)** |
| **ALEXANDRA TRUST,** | § | |
| | § | **Related to ECF No. 28** |
| **DEBTOR.** | § | |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION TO LIFT STAY

Before the Court is the Limited Appearance and Motion for Relief from Stay [ECF No. 28] (the "**Motion**") filed by state court plaintiffs M Street Investments, Inc. ("**M Street**"), Great Southern Investments Group, Inc. ("**Great Southern**"), Ronald Lewis ("**Lewis**"), NIT Management, Inc. ("**NIT Management**"), and Brett Maverick Ventures, L.P. ("**BMV**" and, collectively, the "**Movants**"), requesting that this Court terminate the automatic stay to permit the case styled _M Street Inv., Inc. v. AGT Capital, LLC,_ Case No. 75CI1:14-cv-0060 (the

"**Mississippi Action**"), pending in the Circuit Court of Warren County, Mississippi (the "**Mississippi State Court**"), to proceed.[1] Alternatively, the Motion requests that the Court clarify that the automatic stay only applies to the Mississippi Action as it relates to debtor Alexandra Trust (the "**Debtor**"), and does not stay litigation against the other co-defendants. The Debtor filed an objection to the Motion, which B.O.S. Consulting, LLC ("**B.O.S.**"), a general unsecured creditor of the Debtor, joined.

On December 16, 2014, the Court held a preliminary hearing on the Motion, after which it entered an Order [ECF No. 88] (the "**Clarification Order**") to clarify that the only matters stayed in the Mississippi Action by reason of the Debtor's bankruptcy petition are claims asserted against the Debtor and acts to obtain or exercise control over property of the Debtor's estate.

On February 13, 2015, the Court held and concluded a final evidentiary hearing on the Motion (the "**Hearing**"), at which time it heard the live testimony of four witnesses[2] and admitted over thirty documents into evidence. The Motion is now ripe for ruling. Based on the record before it, the Court finds[3] that the Debtor's bankruptcy petition was not filed in good faith and concludes that such lack of good faith constitutes cause to terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) so that the Mississippi Action may proceed in Mississippi State Court.

---

[1] At the time of the filing of the Motion, the Mississippi Action was pending in the Mississippi State Court. It has subsequently been removed to federal court.

[2] The witnesses testifying at the Hearing were Richard Dale Sterritt, Jr., Donald A. Bailey, Hunter Jochen, and Alexander Vickers.

[3] This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9014. To the extent that any finding of fact is more properly considered a conclusion of law, or a conclusion of law a finding of fact, it should be so considered.

## I.    JURISDICTION AND VENUE; STATUTORY AND CONSTITUTIONAL AUTHORITY

The U.S. District Court for the Northern District of Texas has subject matter jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334.  Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151 grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28.  Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts either for entry of a final judgment (core proceedings) or for submission of proposed findings and conclusions (noncore, related-to proceedings).  Thus, this Court exercises jurisdiction over the Debtor's Chapter 11 bankruptcy case pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984.  Venue is proper here under 28 U.S.C. § 1408.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    General Background

The Debtor is a trust formed in 1995.  Its current co-trustees are Richard Dale Sterritt, Jr. ("**Sterritt**") and his elderly mother Sarah Ester Sterritt (together with Sterritt, the "**Co-Trustees**").  According to Sterritt, the Debtor has no employees or operations, but holds ownership interests in various companies.  One of those alleged companies, M Street, is at the center of the dispute between the Debtor and the Movants.

According to Sterritt, M Street was incorporated to purchase the shares of Great Southern, a company that owned the Grand Station Hotel in Vicksburg, Mississippi (the "**Hotel**").  As both Sterritt and Donald K. Bailey ("**Bailey**") testified, the record shareholders of

M Street are Avondale Shipyards, Inc. ("**Avondale**"),[4] NIT Management,[5] Lewis, and BMV or Bailey.[6] According to Sterritt, however, M Street's shares were to be issued to the Debtor and any shares not issued directly to the Debtor were to be held for the Debtor's benefit. Sterritt alleges that, instead, NIT Management, Jeffrey Parlin ("**Parlin**"), Bailey, and others misappropriated the stock in M Street, as well as in other entities. Those parties then allegedly proceeded to fraudulently constitute M Street's board of directors, who, in turn, improperly elected officers, so that they could ultimately gain control over the Hotel.

This ownership dispute has arisen in several contexts in multiple courts, including the U.S. District Court for the Southern District of Mississippi (the "**Mississippi District Court**"), the U.S. Bankruptcy Court for the Southern District of Mississippi, and the Mississippi State Court. The latest iterations are the Mississippi Action, which is the subject of the Motion, and an adversary proceeding filed by the Debtor in this Court styled *Alexandra Trust v. M Street Inv., Inc.*, Adv. Proc. No. 14-3156 (the "**Adversary Proceeding**"), to which the Court will now turn.

### B. The Mississippi Action

On August 6, 2014, the Movants filed their First Amended Complaint in the Mississippi State Court, naming AGT Capital LLC ("**AGT Capital**"), AGT Global Holding, LLC ("**AGT Global**"), Avondale, the Debtor, the Co-Trustees (each individually and as a Co-Trustee), David Virgil Dafinoiu ("**Dafinoiu**"), and John Does 1-5 as defendants (collectively, the **"State Court**

---

[4] The Debtor's Schedule B reflects that it owns 100% of Avondale.

[5] The Debtor's Schedule B reflects that it owns 100% of NIT Management; however, it appears that the Debtor's ownership may be in dispute based on NIT Management's inclusion in the Adversary Proceeding, discussed below. *See* Adv. Compl. [Movants' Ex. 21].

[6] Bailey testified that the record shareholder is BMV, while Sterritt testified that the record shareholder is either Bailey or BMV.

Defendants").[7]  First Am. Compl. [Movants' Ex. 3] ¶¶ 6-13.  The First Amended Complaint is discussed in detail in § III.A.c), *infra*.

According to the Movants, the day before the State Court Defendants' answers were due – on October 20, 2014 (the "**Petition Date**") – the Debtor filed its voluntary bankruptcy petition seeking protection under Chapter 11 of the Bankruptcy Code.  After filing its bankruptcy petition here, the Debtor filed a Suggestion of Bankruptcy with the Mississippi State Court and took the position that the automatic stay prevented the Mississippi Action from proceeding as against all State Court Defendants on all counts.  *See* Motion to Stay Action Pending Resolution of Bankruptcy Case [Movants' Ex. 13] at 1 ("This automatic stay provision of the U.S. Bankruptcy Code applies not only to the debtor seeking bankruptcy relief but also to non-debtor co-defendants.").

### C.      The Motion for Relief From Stay

On November 21, 2014, the Movants filed the Motion, thereby seeking relief from the automatic stay on the grounds that the Debtor's bankruptcy petition was filed as a litigation tactic and not in good faith.  In its objection to the Motion, the Debtor argued that the stay should remain in place, to wit:

> The bankruptcy petition was filed in good faith. It is not unusual that a Debtor files bankruptcy on the eve of a foreclosure sale, a lawsuit, a deposition or some other such event. That in and of itself does not mean this case was filed in bad faith. Rather, the Debtor has a clear plan in mind and process to recover the valuable assets that were removed from it prior to the filing.
> There is no reason to lift the stay this early in this case. Doing so would impact the ability of the Debtor to have the breathing room necessary to formulate a plan in this case.  The Debtor should have the 120 [day] exclusive period in order to formulate a plan and to set in motion the actions in the Bankruptcy Court that will allow the Debtor to reorganize.

---

[7] The Debtor's Schedule B reflects that it owns 100% of both AGT Capital and Avondale.  At the Hearing, Sterritt testified that Dafinoiu owns AGT Global, which acts as AGT Capital's manager.

Objection to Limited Appearance and Motion for Relief from Automatic Stay [ECF No. 36] ¶¶ 25-26.

A preliminary hearing on the Motion was held on December 16, 2014.  Although the Court declined to terminate the stay at that time, it did enter the Clarification Order on January 14, 2015,[8] which states as follows:

> At this time, the Court grants the Motion to the extent it seeks confirmation that the automatic stay only applies to the Debtor and no other co-defendant.
>
> IT IS THEREFORE ORDERED and CONFIRMED that the only claims stayed by reason of the Debtor's bankruptcy filing are those claims asserted against the Debtor, which claims are stayed in accordance with 11 U.S.C. § 362(a)(1).
>
> IT IS FURTHER ORDERED and CONFIRMED that any acts to obtain possession of property of the Debtor's bankruptcy estate or of property from the Debtor's bankruptcy estate or to exercise control over property of the Debtor's bankruptcy estate are also stayed in accordance with 11 U.S.C. § 362(a)(3).

Clarification Order [ECF No. 88] at 1-2.

Six days later, on January 20, 2015, the Debtor and the Co-Trustees (individually and as co-trustees) filed a Notice of Removal, removing the Mississippi Action to the Mississippi District Court, along with a motion seeking to transfer the Mississippi Action to this Court.  This Court was informed at the Hearing that the Movants oppose the transfer and are seeking to remand the Mississippi Action to the Mississippi State Court.

**D.    The Adversary Proceeding**

On December 12, 2014, the Debtor filed the Adversary Proceeding, naming the Movants, Parlin, Bailey, Sandra L. Bailey, Niki Weiss, and John Moore as defendants.  Count I of the Complaint is an action under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, seeking

---

[8] At the conclusion of the preliminary hearing, the parties were directed to submit an agreed form of order.  The parties were unable to do so, and instead submitted competing orders on January 13, 2015.  This accounts for the delay between the preliminary hearing on December 16, 2014 and entry of the Clarification Order on January 14, 2015.

a declaratory judgment on alter ego grounds that M Street, NIT Management, and Great Southern, and all their respective assets, are property of the Debtor's bankruptcy estate. Adv. Compl. [Movant's Ex. 21] ¶ 69.

In addition to its Count I declaratory judgment action, the Debtor has also asserted: Count II – Piercing the Corporate Veil, seeking an order finding that the Debtor and the "Alter Ego Defendants"[9] are one and the same entity for all purposes and authorizing the Debtor to administer and liquidate their assets for the benefit of the estate; Count III – Declaratory Action (Property of the Estate and Turnover), seeking a declaratory judgment that various personal property not titled in the Debtor's name is property of the estate, including 100% of the interests of 12 companies (among them M Street, Great Southern, and NIT Management);[10] Count IV – Substantive Consolidation, seeking to substantively consolidate the Alter Ego Defendants into the Debtor's estate; Count V – Injunction, seeking temporary and permanent injunctive relief to enjoin various persons and entities "from taking any action or executing any document consistent with their continued ownership or control of potential property of the estate … and that all persons with knowledge of this action and bankruptcy case be enjoined from proceeding against or exerting ownership or control over these entities and assets to the detriment of the Debtor and the Debtor's Estate;" and Count VI – Conspiracy to Commit Fraudulent Transfers related to the ownership interests described in the Adversary Complaint. The Debtor also seeks special and exemplary damages, joint and several liability, and other related relief.

---

[9] The term "Alter Ego Defendants" is not concisely defined in the Adversary Complaint. In ¶ 61, the term is defined as "all Defendants except Moore (collectively, the "Alter Ego Defendants"), which would mean the term refers to M Street, Great Southern, NIT Management, Parlin, Bailey, BMV, Sandra Bailey, Niki Weiss, and Lewis. In context within the Adversary Complaint, however, the term appears to only refer to M Street, Great Southern, and NIT Management. Thus, for purposes of its summary description of the Adversary Proceeding, the Court will assume that the "**Alter Ego Defendants**" are comprised of M Street, Great Southern, and NIT Management.

[10] The other companies subject to Count III are NIT Solutions, Inc.; Paulston Holdings, Inc.; Pro Tech Designs, Inc.; JG Communications, Inc.; NIT Services, Inc.; Arsole Holdings, Inc.; Meshtech Wireless, Inc.; DeSota Island; and Magal, USA, Inc.

## III. LEGAL ANALYSIS

In the Motion, the Movants allege that the Debtor's bankruptcy petition was not filed in good faith, but was instead filed solely as a litigation tactic to enable the Debtor to remove the Mississippi Action from the Mississippi State Court to federal court, which Sterritt perceives as a more favorable venue. According to the Movants, this lack of good faith constitutes "cause" to terminate the automatic stay under 11 U.S.C. § 362(d)(1).[11] In its response, the Debtor argues that it did file its petition in good faith, but provides no supporting facts. *See* Objection to Limited Appearance and Motion for Relief from Automatic Stay [ECF No. 36].

When alleging grounds to lift the automatic stay, other than for a lack of equity, the movant is required to make a prima facie showing that it is entitled to relief from stay. Once the movant alleges facts demonstrating a legal entitlement to the relief sought, the burden shifts to the debtor (or party opposing relief) to prove that cause does not exist to lift the automatic stay. 11 U.S.C. § 362(g) ("In a hearing under subsection (d) … (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property and (2) the party opposing such relief has the burden of proof on all other issues."); *Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (movant's failure to make an initial showing of cause under § 362(d)(1) "warrants denial of the motion and should relieve the debtor from having to go forward with any proof").

In addition to alleging "cause," the Movants also question this Court's constitutional authority to adjudicate all the disputes raised in the Mississippi Action, citing to *Stern v. Marshall*, 564 U.S. —, 131 S. Ct. 2594 (2011) and *In re BP RE, LP,* 744 F.3d 1371 (5th Cir.

---

[11] Section 362(d)(1) states in relevant part that: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause…." The term "cause" is not defined in the statute "so as to afford flexibility to the bankruptcy courts." *Little Creek Dev. Co. v. Commonwealth Mortg. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986).

2014).  Movants argue that the Mississippi State Court is the *only* venue in which "all of the issues concerning the acquisition of, damage to, insurance proceeds on, sale of, and corporate control over the Grand Station Hotel in Vicksburg, Mississippi, can be resolved in a single, binding case."  Memorandum of Law by M Street Investments, Inc., *et al*. in Support of Motion to Modify Stay [ECF No. 123] at 1-2.  According to the Movants, any decision other than lifting the automatic stay "simply guarantees delay, jurisdictional and procedural chaos, increases costs significantly, bifurcates and tries piecemeal at least twice, and potentially three times, the claims which arise from the single set of operative facts that occurred years ago in Mississippi, and – importantly – serves absolutely no bankruptcy reorganization (or liquidation) purpose."  *Id.* at 2.

Before addressing the Movant's allegations, however, the Court will first address Sterritt's testimony given at the Hearing as to why the Debtor filed its bankruptcy petition.

### A.     The Debtor's Stated Reasons for Filing its Bankruptcy Petition are Specious, at Best, and Otherwise False

At the Hearing, Sterritt was evasive in answering questions posed by Movant's counsel.  Even when asked by the Court to "crisply state" why the Debtor filed its bankruptcy petition, Sterritt had difficulty responding.  He initially answered that the petition was filed on the advice of counsel, but would not articulate a substantive reason.  When pressed by the Court, Sterritt then stated that the Debtor filed because it needed relief under the Bankruptcy Code to reorganize.  When the Court asked "to reorganize what," Sterritt replied "because there is so much litigation going on, I thought it would be easier to manage in the bankruptcy so I could figure it all out."  Hr'g Tr., Feb. 13, 2015 at 10:13 a.m.[12]  His ultimate answer was that the Debtor's bankruptcy petition was filed because: (1) the Debtor must consolidate pending litigation into a single forum in order to effectively manage it; (2) the Mississippi State Court is

---

[12] A written transcript of the Hearing was not available as of the date of this Memorandum Opinion and Order; thus, the Court's citation is to the audio recording.

not competent to hear the Mississippi Action; (3) most of the parties to the Mississippi Action are either located in Texas or their books and records are in Texas; and (4) the Debtor would receive a quicker resolution in this Court than in the Mississippi State Court.

The Court finds Sterritt's testimony on these points self-serving, not credible, or both, as explained below.

### a) As of the Petition Date, the Debtor Had No Litigation to Consolidate

As to the first reason, the need to consolidate litigation, it became apparent after Sterritt testified that the Mississippi Action was the *only* pending litigation involving the Debtor as of the Petition Date. Thus, there was nothing to consolidate, as all litigation was already pending in a single court, and Sterritt's first alleged reason justifying the Debtor's bankruptcy petition is simply false.[13]

### b) Mississippi Courts are Competent to Decide Matters of Mississippi Law

As to the second reason, Sterritt testified that he consulted with multiple attorneys and was told that Mississippi state court judges are not competent to hear a lawsuit as allegedly complex as the Mississippi Action. The Court has multiple issues with Sterritt's testimony on this point.

First, Sterritt was unable to name the attorneys who allegedly told him this.[14] Second, this "evidence" is inadmissible hearsay, although Movant's counsel failed to object to it. Third, as Sterritt admitted, he has no independent basis upon which to know if Mississippi judges are competent or not. Finally, it is simply not credible that Mississippi judges are not competent to

---

[13] Although litigation involving B.O.S. and M Street was pending on the Petition Date, the Debtor is not a named party to that lawsuit.

[14] Sterritt did name several attorneys who he consulted with, several of whom he ultimately hired, but he never gave the names of the attorneys who allegedly told him that the Mississippi State Court was not competent to hear the Mississippi Action.

hear disputes brought in Mississippi state court based primarily on Mississippi law. Thus, the Debtor's alleged second justification for filing its bankruptcy petition also fails.

c) **Sterritt's Belief that this Court is a More Convenient Forum is Not a Good Faith Grounds for the Debtor to File its Bankruptcy Petition**

A review of the First Amended Complaint shows that the parties are various individuals and entities formed or residing in multiple states, including Mississippi, Texas, Alabama, Nevada, Louisiana, and Delaware. First Am. Compl. [Movants' Ex. 3] ¶¶ 1-12.[15] Sterritt testified at the Hearing, however, that most of these parties either reside in Texas or have books and records in Texas, and that this Court is a more convenient forum. Even if the Court were to assume that most of the parties reside in Texas, the parties' books and records are in Texas, venue is proper in Texas, and a federal court in Texas has jurisdiction over the Mississippi Action, none of that is relevant to whether the Debtor filed its bankruptcy petition in good faith. Indeed, filing a bankruptcy petition in good faith and obtaining a convenient forum for ancillary litigation are two different concepts. Accordingly, the Court finds that obtaining a more convenient forum in litigation, standing alone, is not a good faith reason for filing a bankruptcy petition, and the Debtor's third justification for filing its bankruptcy petition also fails.

d) **Because this Court Cannot Provide a Full and Final Resolution as to All Parties on All Counts, It Cannot Provide a Speedier Resolution of the Issues Raised in the First Amended Complaint**

The Debtor's sole remaining justification for filing its bankruptcy petition is that it will receive a speedier resolution of the issues raised in the Mississippi Action in this Court. This Court, however, does not agree. As will be explained below, this Court lacks both the statutory and constitutional authority to grant full and final relief as to all parties on all counts. This

---

[15] The Court notes, however, that there is not complete diversity among the parties.

inability would cause a procedural quagmire upon the transfer of the Mississippi Action to this Court, resulting in the District Court here either withdrawing the reference or having to review proposed findings and conclusions issued by this Court on some issues *de novo*. To fully explain this finding, the Court will briefly discuss the parameters of its statutory and constitutional authority to adjudicate matters before analyzing the counts of the First Amended Complaint.

### (1) Statutory Authority

28 U.S.C. § 1334(b) lists three types of proceedings over which the district court has jurisdiction – those "arising under title 11," those "arising in" a case under title 11, and those "related to" a case under title 11. The classification of a proceeding under § 1334 depends on the connection of the proceeding to the bankruptcy case. "Arising under" jurisdiction involves "causes of action created or determined by a statutory provision of title 11." *Faulkner v. Eagle View Capital Mgt. (In re The Heritage Org., L.L.C.),* 454 B.R. 353, 360 (Bankr. N.D. Tex. 2011) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)). "Arising in" jurisdiction is "not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy." *Faulkner*, 454 B.R. at 360 (citing *Wood*, 825 F.2d at 97). "Arising under" and "arising in" proceedings are "core" proceedings. 28 U.S.C. § 157(b); *Stern* 131 S. Ct. at 2605 (2011); *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002).

In comparison, "related to" jurisdiction exists if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also U.S. Brass*, 301 F.3d at 304. "That state law may affect a proceeding's resolution cannot be the sole basis by which a proceeding is excluded from the otherwise large net cast by 'related to' jurisdiction." *Hartley v. Wells Fargo Bank, N.A. (In re Talsma)*, 509 B.R.

535, 542 (Bankr. N.D. Tex. 2014) (citing 28 U.S.C. § 157(b)(3)). Proceedings that involve merely "related to" jurisdiction and do not otherwise arise under the Bankruptcy Code or arise in a bankruptcy case are "non-core." *Faulkner*, 454 B.R. at 360.

A bankruptcy judge's authority in cases and proceedings differs depending on whether the subject matter is "core" or "non-core." 28 U.S.C. § 157(b)-(c). A bankruptcy court may hear and determine (*i.e.*, enter a final order in) all cases filed under title 11 and all proceedings within a bankruptcy court's "core" authority. *Id.* § 157(b)(1). Section 157(b)(2) provides a nonexclusive list of such core proceedings. *Id*. § 157(b)(2). In non-core proceedings, the statute limits the bankruptcy court to issuing proposed findings of fact and conclusions of law to the district court, unless the parties otherwise consent. *Id*. § 157(c)(1).

### (2)    Constitutional Authority

In *Stern v. Marshall*, 564 U.S. —, 131 S. Ct. 2594 (2011), the U.S. Supreme Court held that, notwithstanding the bankruptcy court's statutory authority under 28 U.S.C. § 157(b)(2)(C) to adjudicate an estate's counterclaim against a creditor, the bankruptcy court lacked constitutional authority to enter a final judgment on the state-law counterclaim because such claim would "not [be] resolved in the process of ruling on a creditor's proof of claim." *Id*. at 2620; *see also BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.*, 735 F.3d 279, 286 (5th Cir. 2013) ("Thus, 'Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'") (quoting *Stern*, 131 S. Ct. at 2618); *Frazin v. Haynes & Boone, LLP (In re Frazin)*, 732 F.3d 313, 317-20 (5th Cir. 2013) (concluding that two of three counterclaims would necessarily be resolved in the bankruptcy court's award of attorneys' fees and were therefore within the bankruptcy court's constitutional authority under *Stern*). Thus, in addition to determining whether each alleged

claim is core or non-core, the Court must also determine whether the underlying issue "stems from the bankruptcy itself" or it "would necessarily be resolved in the claims allowance process." *BP RE*, 735 F.3d at 286.  Absent both statutory and constitutional authority, this Court may not enter a final judgment, and instead must issue proposed findings of fact and conclusions of law to be considered by the District Court.[16]  Depending on the District Court's caseload, the issuance of such proposed findings and conclusions could add significant delay to the entry of a final order by the District Court.

With this framework firmly in mind, the Court now turns to the claims asserted in the First Amended Complaint.

### (3)    Application to the First Amended Complaint

Count I of the First Amended Complaint seeks a declaratory judgment that: (1) the Debtor owns no stock, and has never owned stock, in M Street or Great Southern; (2) none of the State Court Defendants individually constitute the controlling shareholder interest in M Street or Great Southern; (3) the State Court Defendants collectively do not constitute a controlling shareholder interest in M Street or Great Southern; (4) the shareholders of M Street consist of BMV, NIT Management, Lewis, and Avondale; (5) the directors of M Street are Bailey, Lewis, and Parlin; (6) the officers of M Street are President – Bailey, Vice President – Lewis, and Secretary/Treasurer – Parlin; (7) M Street, acting through the directors and officers identified above, have the right to take possession of, spend, and distribute all of M Street's income, including the proceeds from the Zurich insurance policy and the Zurich litigation; (8) AGT has no standing as a shareholder of M Street or Great Southern and that it is prohibited from

---

[16] Although 28 U.S.C. § 157(c)(2) permits parties to consent to a bankruptcy court's entry of a final judgment in non-core proceedings, such consent only confers statutory authority.  Under Fifth Circuit precedent, the parties' consent cannot confer constitutional authority on a bankruptcy court. *See In re BP RE, LP,* 744 F.3d 1371 (5th Cir. 2014).

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT STAY** **14**

asserting any claims purportedly transferred to it as a result of the December 27, 2013 assignment agreements; and (9) that the State Court Defendants must indemnify M Street and Great Southern for any damages caused by their slander of title or by their filing of the Memorandum (as defined in the First Amended Complaint) or *lis pendens* notice. First Am. Compl. [Movant's Ex. 3] ¶ 69.

Based on its review of the First Amended Complaint and the precedent discussed above, this Court finds that the only portions of the Count I declaratory judgment action that it has full authority to finally determine are: (1) whether the Debtor owns M Street and Great Southern stock and, if so, in what percentages, and (2) whether the Debtor must indemnify any of the State Court Defendants. The Court will address these in turn.

First, determining what assets constitute property of the Debtor's estate arises under the Bankruptcy Code, specifically 11 U.S.C. § 541, and is a core proceeding under 28 U.S.C. § 157(b)(2). The fact that this determination may revolve around state law does not affect this Court's authority. As explained by the Fifth Circuit in *In re Croft,* 737 F.3d 372 (5th Cir. 2013):

> To determine whether something is property of the bankruptcy estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate. *Mitchell v. BankIllinois*, 316 B.R. 891, 896 (S.D. Tex. 2004); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979) (holding that [p]roperty interests are created and defined by state law); *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. 2007) (holding that while a debtor's pre-petition rights in property are determined according to state law, federal bankruptcy law determines the extent of a debtor's bankruptcy estate).

*Id.* at 374-75. Accordingly, based upon the record before it, the Court concludes that it would have both statutory and constitutional authority to enter a final order fully determining what assets are property of the Debtor's estate.[17]

Second, each of the state court plaintiffs is a creditor of the Debtor's estate who timely filed a proof of claim that attaches a copy of the First Amended Complaint to it. *See* Claims Register, Case No. 14-35049, Claim Nos. 6-11.[18] Although the alleged indemnification right is based on state law, the claim must be resolved as part of the claims adjudication process, giving this Court both statutory and constitutional authority over the indemnification claims as against the estate. *See BP RE*, 735 F.3d at 286; 28 U.S.C. § 157(b)(2)(B). Anything beyond these limited rulings, however, would involve the adjudication of state law rights among non-debtor parties, which is wholly independent of federal bankruptcy law. Thus, the Court could not afford a full and final resolution to all parties as to Count I of the First Amended Complaint, and those issues as to the non-debtor parties would have to be finally determined by the District Court.

The remaining counts of the First Amended Complaint are: Count II – alleging damages arising from the State Court Defendant's purported violations of Mississippi Code § 97-9-11,[19] which is titled in the complaint as "Champerty and Maintenance;" Count III, alleging damages

---

[17] But see *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), which is currently on appeal to the U.S. Supreme Court. *Wellness Int'l Network Ltd. v. Sharif*, 134 S. Ct. 2901 (2014) (granting certiorari in part). One of the issues before the Supreme Court is whether the presence of a state law issue in a § 541 action brought against a debtor stems from the bankruptcy itself and, therefore, the bankruptcy court has constitutional authority to enter a final order. The Supreme Court has not yet ruled. Should the Supreme Court rule that bankruptcy courts do not have constitutional authority to hear § 541 issues that are based on state law, such a ruling would be further reason to terminate the automatic stay.

[18] Each of the claims is filed as contingent and is based upon the outcome of the Mississippi Action.

[19] "It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated from this state or any other state, either before or after proceedings commenced: (a) to promise, give, or offer, or to conspire or agree to promise, give, or offer, (b) to receive or accept, or to agree or conspire to receive or accept, (c) to solicit, request, or donate, any money, bank note, bank check, chose in action, personal services, or any other personal or real property, or any other thing of value, or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court or before any administrative board or other agency, regardless of jurisdiction…." Miss. Code § 97-9-11.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT STAY**                    **16**

arising from the State Court Defendants' purported abuse of process for "employ[ing] court process in a manner not contemplated by the law, and to obtain an object that process is not intended by law to effect;"[20] Count IV, alleging malicious prosecution against Avondale, the Debtor, Sterritt, AGT, and Dafinoiu for purportedly bringing claims against the Movants without probable cause, but with malice and ulterior motives; Count V, alleging conspiracy against all of the State Court Defendants for, among other things, allegedly agreeing to accomplish the unlawful purposes of champerty, slander of title to property, and to institute and maintain champertous and frivolous litigation; and Count VI, seeking indemnification against Sterritt Dafinoiu, AGT, Avondale, and the Debtor.

With respect to each of these counts, the Court would have both statutory and constitutional authority to consider the claims as against the Debtor; however, this Court could go no further. As with Count I, anything beyond these limited rulings would involve the adjudication of state law rights among non-debtor parties, which is wholly independent of federal bankruptcy law. As such, this Court could not accord full relief as to all parties with respect to Counts II through VI of the First Amended Complaint, and those issues as to the non-debtor parties would have to be finally determined by the District Court.

The Court has considered and found unpersuasive each of the Debtor's stated reasons for filing its bankruptcy petition. Based upon the record created at the Hearing, the Court finds that this failure, standing alone, constitutes cause to terminate the stay. Nonetheless, the Court will also analyze the Movants additional allegations that the Debtor's bankruptcy petition was filed as a litigation tactic and not in good faith, which, if true, constitute cause to terminate the stay.

---

[20] First Am. Compl. [Movants' Ex. 3] ¶ 75.

**B.** **Filing a Bankruptcy Petition as a Tactic to Gain Advantage in Pending Litigation is "Cause" to Terminate the Stay**

Based on the record created at the Hearing, it is apparent to the Court that the Debtor's bankruptcy filing and its subsequent actions were strategically timed to events in the Mississippi Action. Indeed, the Debtor filed its bankruptcy petition here the day before its answer was due in the Mississippi Action, and then took the position that the entire lawsuit was stayed as to all State Court Defendants – a position that is clearly wrong. 11 U.S.C. § 362(a)(1). After the preliminary hearing on the Motion, the Court entered its Clarification Order, in which it clarified that the automatic stay only prohibited actions against the Debtor and property of the Debtor's estate. Six days later, the Debtor (who remained protected by the stay) and its Co-Trustees filed their Notice of Removal in the Mississippi Action, effectively staying the litigation pending resolution of transfer and remand issues. Although none of these actions are *per se* indications of a lack of good faith, they are facts that the Court will consider in its analysis.

Further, at the Hearing, Sterritt testified that the Debtor's purpose for filing its bankruptcy petition was to consolidate all of its litigation into a single forum. Although it was shown that the Debtor did not have multiple litigation to consolidate, that testimony, coupled with the fact that the Debtor has no operations, employees, or income, makes it clear to the Court that the Debtor's bankruptcy petition was filed as a litigation tactic to gain advantage in the Mississippi Action. Under clearly established precedent, this constitutes "cause" to dismiss a case under 11 U.S.C. § 1112(b) and, by implication,[21] to terminate the stay under § 362(d)(1). *See, e.g.*, *In re Antelope Techs., Inc.*, 431 Fed. Appx. 272, 275 (5th Cir. 2011) (per curium)

---

[21] The "standards for bad faith as evidence of cause, whether in the context of dismissal or relief from stay, are not substantively different from each other." *In re Project Orang Assoc., LLC*, 432 B.R. 89, 112-13 (Bankr. S.D.N.Y. 2010) (internal quotations omitted) (citing cases); *see also Little Creek*, 779 F.2d at 1072 (stating that the same type of analysis applies to both statutes). Thus, cases finding cause to dismiss a bankruptcy case for lack of good faith under § 1112(b) are instructive to the Court's analysis of the Motion.

(unpublished) (affirming dismissal of bankruptcy case, finding "the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative litigation"); *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004) (filing of a Chapter 11 petition merely to obtain tactical litigation advantages is not within legitimate scope of bankruptcy laws); *Investors Group, LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) (affirming dismissal of bankruptcy case, finding that "[a]fter conducting a thorough hearing, the bankruptcy court concluded that the primary purpose for filing the bankruptcy petition was to gain an advantage in the derivative lawsuit. Accordingly, the bankruptcy court's finding that Investors Group filed bankruptcy in bad faith was not clearly erroneous."); *South Canaan Cellular Equity, LLC v. South Canaan Cellular Investment, LLC (In re South Canaan Cellular Investments, LLC)*, 420 B.R. 625 (E.D. Pa. 2009) ("[I]f the sole purpose of the bankruptcy filing is to obtain a tactical litigation advantage, the petition is considered to have fallen outside the legitimate scope of the bankruptcy laws and may properly be dismissed."); *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").   Based on this precedent, the Court finds that the Debtor filed its bankruptcy petition as a litigation tactic, and concludes that such action is further cause to terminate the automatic stay.

Despite finding that (1) the Debtor failed to articulate a valid reason for filing its bankruptcy petition, and (2) the Debtor filed its bankruptcy petition as a litigation tactic, each of which constitute independent cause to terminate the stay, the Court will nonetheless also consider factors established by the Fifth and Second Circuits that lower courts may utilize in

determining whether a bankruptcy petition was filed in good faith.  As explained in more detail below, these factors show that the Debtor's bankruptcy petition was not filed in good faith, which is also cause to terminate the stay.

### C.    A Debtor's Lack of Good Faith in Filing its Bankruptcy Petition is "Cause" to Terminate the Stay

Although not expressly listed in § 362(d)(1), it is well established that a debtor's lack of good faith may constitute "cause" for relief from the automatic stay.  *In re Trident Assoc., Ltd.,* 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995); *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026-27 (11th Cir. 1989), *cert denied*, 493 U.S. 853 (1989) ("We hold that the bankruptcy court did not err in its determination that there was bad faith to justify lifting the stay."); *Little Creek*, 779 F.2d at 1072 (citing cases); *In re 68 West 127 Street, LLC*, 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002); *Mother African Union Methodist Church v. The Conference of AUFCMP Church (In re the Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("Filing bankruptcy in bad faith is 'cause' for relief under Code § 362(d)(1).").  This is so because, as explained by the Fifth Circuit:

> Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (*i.e.*, avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Little Creek,* 779 F.2d at 1072 (citing cases).

Various Circuit-level courts have established factors to assist lower courts in their analysis of whether a bankruptcy petition was filed in good faith.  *See In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990); *Little Creek Dev. Co. v. Commonwealth Mortg. (In re Little Creek*

*Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986). As explained by the Fifth Circuit, however, this Court's decision with respect to the Motion will depend largely on its on-the-spot evaluation of the Debtor's financial condition, its motives, and the local financial realities of this case, and not on any single factor. *Little Creek*, 779 F.2d at 1072.

With this said, however, the Court will address the factors established by the Fifth Circuit in *Little Creek Dev. Co. v. Commonwealth Mortg. (In re Little Creek Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986). Although the *Little Creek* case was factually different from this case, the Court finds several of the factors relevant in its analysis, including whether: (1) there are no employees except for the principals; (2) there is little or no cash flow and no available source of income to sustain a plan of reorganization; (3) there are only a few unsecured creditors whose claims are relatively small; (4) the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; and (5) there are allegations of wrongdoing by the debtor or its principals. *Little Creek*, 779 F.2d at 1073.[22]

The first two factors are clearly met here. According to Sterritt, the Debtor has no employees, no operations, and has had no income for the past three years. As of the Petition Date, the Debtor had $940 in its bank accounts, which is clearly insufficient to sustain a plan of reorganization or liquidation. In fact, the Debtor is currently unable to pay its estate administration costs. To accommodate this, Co-Trustee Sarah Ester Sterritt has agreed to pay the

---

[22] The *Little Creek* analysis also includes factors uniquely associated with single-asset real estate cases and "new debtor syndrome" (where a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors). No party has alleged that those types of factors are applicable here, and this Court agrees they are not.

Debtor's attorneys' fees and expenses from her personal funds,[23] and Sterritt testified that he is in

discussions with B.O.S. in an attempt to obtain funding for the Debtor's litigation.

The third factor is not as clear cut. As reflected in both the Debtor's Schedule F and its

Claims Register, there are multiple claims owed by the Debtor's estate and the claims are not

insubstantial. The Court notes, however, that there was no testimony on the record that any of

these creditors have taken actions to collect against the Debtor. Further, as discussed further

below, the aggregate claims held by the few creditors who are not directly or indirectly involved

in the Mississippi Action, or by potential insiders of the Debtor, are relatively small. The Court

finds this factor neutral to slightly indicating that the Debtor's bankruptcy petition was not filed

in good faith.

As to the fourth factor, although the Movants and the Debtor have not litigated to a

standstill, the parties have a long and acrimonious litigation history in Mississippi. In fact, the

stated reason for the Debtor's bankruptcy petition was to remove the Mississippi Action to

federal court. Thus, although this *Little Creek* factor is not completely on point to the case at

hand, the Court finds that the Debtor's actions with respect to the Mississippi Action, as

discussed in § III.A.c), *supra,* indicate that the Debtor's bankruptcy petition was not filed in

good faith.

Finally, as to the fifth factor, the Mississippi Action does involve allegations of wrong-

doing against the Debtor, including claims of champerty and maintenance, malicious

prosecution, and abuse of process. These claims, however, are not the subject of a final

judgment, nor has the Court seen any material evidence supporting these allegations. As such,

---

[23] *See* Second Amended Application to Employ Counsel [ECF No. 58] ¶ 10; Order on Debtor's Second Amended Application to Employ Counsel [ECF No. 107] at 1; Amended Application to Employ Special Counsel Jules P. Slim [ECF No. 60] ¶ 6; Order on Debtor's Amended Application to Employ Special Counsel Jules P. Slim [ECF No. 108] at 2.

although the allegations of wrong doing are a factor considered by this Court, this factor is not given much weight. Overall, however, the relevant *Little Creek* factors further support a finding that the Debtor's bankruptcy petition was not filed in good faith.

In addition to the relevant *Little Creek* factors, the Court found helpful the Second Circuit's analysis in *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990). In *Sonnax*, the Second Circuit delineated factors that courts should consider when determining whether relief from the automatic stay should be granted to permit pending litigation to proceed in another forum. The *Sonnax* factors this Court found most relevant are: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (4) whether litigation in another forum would prejudice the interests of other creditors; (5) the interests of judicial economy and the expeditious and economical resolution of litigation; and (6) the impact of the stay on the parties and the balance of harms.[24] Each of these factors is discussed in turn, below.

The Court finds that the first factor strongly favors terminating the stay. As discussed in § III.A.c), *supra*, the Mississippi State Court can accord full and final resolution of all issues with respect to all parties, while this Court cannot.

The Court further finds that the second factor also favors terminating the stay. The only apparent nexus between the Mississippi Action and the Debtor's bankruptcy case is that the

---

[24] The Court's brief analysis of the remaining *Sonnax* factors is as follows: (1) whether the foreign proceeding involves the debtor as a fiduciary – it does not; (2) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation – there is nothing in the record indicating this one way or the other; (3) whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question – it does not; (4) whether the judgment claim arising from the foreign action is subject to equitable subordination under § 510(c) – there is nothing in the record regarding this factor, but it does not appear applicable; (5) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f) – there is nothing in the record regarding this factor, but it does not appear applicable; and (6) whether the foreign proceeding has progressed to the point where the parties are prepared for trial – it has not.

bankruptcy case was filed to remove that action to this Court.  Although Sterritt testified that the Debtor also filed its bankruptcy petition to reorganize, he later admitted that the Debtor has no business to reorganize.[25]  Instead, the Debtor intends to sue various parties and, if successful, pay its creditors with litigation proceeds.  In the meantime, however, there is no true bankruptcy estate for the Debtor to administer.  Instead, the Debtor's bankruptcy case will likely sit virtually dormant until the litigation is resolved.  Thus, the Court finds that permitting the Mississippi Action to proceed in the Mississippi State Court would not interfere with the administration of the Debtor's bankruptcy case.

The Court further finds that the third factor favors terminating the stay.  Although the Mississippi Action does not involve a specialized tribunal, it is based primarily on Mississippi law and, as discussed in § III.A.c), *supra*, this Court cannot afford a full and final resolution of the issues among all of the parties.  Moreover, although federal courts are fully capable to hear and determine issues arising under Mississippi law, this Court believes that the Mississippi State Court is better situated to consider and determine issues such as champerty and maintenance, malicious prosecution, and abuse of process, all of which allegedly occurred in violation of Mississippi law and procedure.

The Court further finds that the fourth factor favors terminating the stay.  Based on the record, it does not appear that terminating the automatic stay to permit the Mississippi Action to proceed will prejudice any other creditors or interested parties.  Indeed, other than the parties directly or indirectly involved in the Mississippi Action,[26] there are only eight creditors scheduled by the Debtor.  Of these, Sterritt testified that (1) NQTL, Inc., which is scheduled with

---

[25] As noted previously, Sterritt also testified that the Debtor's bankruptcy petition was filed so that pending litigation could be consolidated and effectively managed.  However, that testimony was false because the Mississippi Action was the only litigation involving the Debtor pending on the Petition Date.

[26] Including named parties and their respective officers and directors.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT STAY**                    **24**

an unsecured claim of $1.3 million, is wholly-owned by the Debtor (though the ownership is scheduled as disputed), and (2) Rapid Management Company, which is scheduled with an unsecured claim of $2.6 million, is owned by Sterritt's former father-in-law. Further, the claims bar date in the Debtor's bankruptcy case passed on February 12, 2015, and only 11 claims were filed against the estate. Of those 11, only four of the creditors are not directly or indirectly involved in the Mississippi Action. Of these four claims, two are for ad valorem taxes (aggregating $20,114.81) and one is for legal fees related to the ownership dispute among the parties ($73,831.50). The remaining claim was filed by B.O.S. in the amount of $5.4 million, allegedly arising from the Debtor's guarantee of its consulting agreement with DeSota Island, Inc. and M Street. It was disclosed at the Hearing that Sterritt and a representative from B.O.S. are in discussions regarding B.O.S. potentially funding the Debtor's litigation. Thus, based on the record before it, including the relatively small number of claims against the estate that are wholly unrelated to the Mississippi Action, the Court finds that terminating the stay would not prejudice the other creditors and parties in interest in the Debtor's case.

The Court further finds that the fifth factor, judicial economy and the expeditious and economical determination of litigation for the parties, strongly favors terminating the stay. The Debtor and the Co-Trustees have removed the Mississippi Action to the Mississippi District Court, where it sits pending resolution of remand and transfer issues. Even if the Mississippi Action were transferred to this Court, as explained in § III.A.c), *supra*, this Court cannot grant full and final relief as to all parties on all counts, leading to a morass of procedural issues and resulting in delay, additional costs, and piecemeal litigation. Such a result is clearly not in the interests of judicial economy and the expeditious and economical determination of litigation for

the parties and the Debtor's creditors, whose only hope of payment lies in the Debtor's success in that litigation.

The Court further finds that the sixth factor, impact of the stay on the parties and the balance of the hurt, favors terminating the stay. The Debtor and the Movants have been litigating throughout Mississippi for several years now, and have apparently had no issue with that venue in the past. Although Sterritt testified that most of the parties to the Mississippi Action either reside in Texas or have books and records in Texas, that testimony only shows that Sterritt believes that this Court is a more convenient forum.[27] There is nothing in the record to indicate that terminating the automatic stay would unduly prejudice the Debtor or any other party to the litigation. To the contrary, if the stay is not terminated, the Mississippi Action will likely be transferred to this Court, which cannot grant full and final relief on all counts among all parties. Such a result would prejudice the Movants, who would be subjected to piecemeal litigation strung between various courts.

### D.    Conclusion

The record from the Hearing clearly shows, and this Court finds, that the Debtor had no good faith reason to file its bankruptcy petition. Rather, the bankruptcy petition was filed as a litigation tactic to gain advantage in the Mississippi Action. The Court concludes that each of these findings is independent cause to terminate the automatic stay under 11 U.S.C. § 362(d)(1) so that the Mississippi Action may proceed in the Mississippi State Court. Notably, there is nothing in the record to evidence that the filing was necessary to consolidate multi-jurisdictional litigation, stave off foreclosure, preserve the Debtor's assets, or maximize the value of the estate

---

[27] Sterritt also testified that it was difficult for Sarah Ester Sterritt to travel because she helped take care of her ill husband; however, there is nothing in the record indicating that her participation in the Mississippi Action is necessary. Sterritt further testified that he has difficulty travelling due to recent heart surgery. His potential travel issues, however, are not a good faith basis for the Debtor to file a bankruptcy petition.

in a manner that would be otherwise unavailable outside of bankruptcy. Indeed, other than fulfilling Sterritt's personal desire to confer federal jurisdiction over the Mississippi Action and obtain a new forum, this Court is hard-pressed to see any benefit resulting from the Debtor's bankruptcy case. If the Debtor prevails in the Mississippi Action, it can pay its creditors outside of the bankruptcy process just as easily as it can pay them in a bankruptcy process where the Debtor's plan would depend on success in that litigation.

Accordingly, the Motion is hereby granted.

**SO ORDERED**.

**# # # END OF MEMORANDUM OPINION AND ORDER # # #**